The petitioner showed that there was a cross-road in the said county, leading from the Griffin Swamp road to the Lee slip, and connecting the two, which was wholly upon the lands of the petitioner, except two or three hundred yards, and for about that distance the road formed a line between the land of the petitioner and the defendant.
The petitioner showed by John Cartwright, B. Cartwright and WilliamBlount, that they were farmers and lived upon their farms, which were situated near the eastern extremity of the said road; that they seldom, or never, used the road, and never to go to any public place, mill or landing, but only to look at Mr. Davis' crops in crop season; that they had no wish or desire to have the said road kept open; that it was of no convenience to them.
Benoni Cartwright stated, that he once knew an overseer to work on the road.
By Ambrose Hollowell, the petitioner showed that he (witness) lived at the eastern extremity of the said road, and nearer to that terminus than any other person except the defendant; that he had been living upon and cultivating a farm there for several years; that said road was of no convenience to him; that he used the road occasionally to pass to church; that the distance saved to him in going to church by this road, was but little — scarcely any. All the witnesses stated, that if a person at the east end of the road, wished to go to to the west and back, the distance saved in the two transits would be from two to three miles. These witnesses further stated, that they did not believe the public interest required the road to be kept open. They stated the road had been used as a public road for twenty years or more.
Miles Davis, for the plaintiff, stated that he had known the road for more than twenty years; that it was opened in 1833 or 1834, and had been, as he believed, during all the time *Page 238 
since, used as a public road by every person desiring to use the same.
Edwin Reed, for the plaintiff, stated that he lived within two miles of the road; that he had lived nearer and used it for mere neighborhood travel, but it was of no convenience to him.
William Hinley, for the plaintiff, had been plaintiff's overseer for several years up to 1856; also for plaintiff's father upon the same, for several years previous to 1852, the time of his death, and that the road was very little used. By several of these witnesses, the petitioner showed that when this road was opened, and for many years thereafter, Benjamin Charles owned and occupied a farm situated on the south side of said road, and near half-way from the termini of the same, and that at the eastern end, Joseph White owned and occupied a farm lying on the south side of the road, and Jas. Palmer, one on the opposite side; that all three of these farms lay immediately on the said road, and that it was of much service and convenience to these three proprietors while they resided there, but that they had all sold and moved off, and their farms are now owned by the plaintiff; that there is now no person or proprietor of land residing on this road, except the defendant, at the west end on the Griffin Swamp road.
All these witnesses testified that it would save the petitioner much expense in keeping up fences; that he had now to keep up near two miles of fencing, which would, by stopping up this road, be dispensed with; that all kinds of timber were getting scarce in that neighborhood.
The witnesses further stated, that the defendant's residence had for twenty, or twenty-five years been a location for a physician, and that persons living at the east end of the road, or in sound neck, a neighborhood at the east end, going for a physician, would be saved three or four miles by this road; that the people in sound neck, which was a large neighborhood, used this road, either in going for a physician or in visiting at the west end.
There was no record evidence that the road had ever been *Page 239 
laid out by authority of the County Court, or that an overseer had ever been appointed on the same.
Doctors Piemont and Speed were examined for the defendant. They stated that they lived in Elizabeth City, twelve miles from the road; that they used the same in visiting patients at the east end of the road, and when having patients at the Harvey place, on Pasquotank river, and at Dry Ridge. They preferred this road in going to and from these places, because it was nearer and better than the other.
Rev. Mr. Kennedy, witness for the defendant, living in Elizabeth City, stated that in fulfilling his appointments to preach in this locality he travelled the road in question, rather than the other, because he believed it to be the nearest and the best.
Mr. Harington, for the same, stated, that he is a butcher, living in Elizabeth City, and that he always drove cattle, purchased in the east end and sound neck along this road, and thinks it nearest and best.
They showed that closing of the road would materially injure the value of defendant's lands as a location for a physician.
Mr. Coppersmith, for the defendant, stated that he was present when the road was made, and helped to make it; that it passed through the land of one Benjamin Charles, which had formerly belonged to one Thomas Pool; that he heard Charles say at the time the road was being made, that it was made for Dr. Ramsey; that the church had compelled Pool to give Dr. Ramsey a road, for which he was to pay seventy-five dollars, and the road was always called Ramsey's road.
The defendant also produced the records of the church, by which it appeared that Pool had been required to give Ramsey a road on the site of the road in question.
It was insisted by the defendant that this was not a public road, but a private one, the purchase of which he had obtained through the instrumentality of the church, of which he and a former owner of the land were fellow members, and for *Page 240 
which he had paid, and that being private property, the Court had no right to take it away from them.
But his Honor held that it was a public road, and being of opinion that it was not beneficial to the public, adjudged that it should be discontinued.
From which judgment the defendant appealed to this Court.
What constitutes a "public road" is a question of law. His Honor, instead of stating the facts, upon which he came to the conclusion that the road, in controversy, was a public road, has set forth all the evidence;
which presents this question: taking all to be true, is this a public road? We are of opinion that it is not.
Many witnesses say that it has been used as a public road more than twenty years, but when their testimony is scrutinized, it amounts only to this: during all of that time the road has been open, and every person took the liberty of travelling over it who chose to do so. Such is the case with every private road in the country, so long as it remains open. One witness,Benoni Cartwright, stated that "he once knew an overseer to work on said road," but the case states "there was no record evidence that the road had ever been laid out by authority of the County Court, or that an overseer had ever been appointed on the same." We do not decide that these facts are necessary to constitute a public road, although, under the provisions of our statutes, it is difficult to see how there can be a public road in our State without them, when it has been open any length of time; but we think the absence of these facts has a strong bearing upon the present enquiry, and tends to explain the evidence. It certainly calls for an explanation of the testimony of Benoni Cartwright. Did he mean the overseer of some adjoining proprietor, or an overseer appointed by Court, with hands duly assigned to him? If the former, it amounts to nothing; if the latter, it *Page 241 
is singular that there is no entry to that effect on the record, and that it was only done on one occasion.
But the whole matter is fully explained by the evidence offered by the defendant. In 1833, the road was opened for the defendant by one Pool, who was required by the church "to give Dr. Ramsey a road," and did so at the cost of seventy-five dollars. After this the defendant continually claimed and used the road as a right, and not as a mere favor, and the road being in this way opened, and kept open, has been used by every one who saw proper to travel it.
The commencement of the easement being thus shown, precludes the idea of its being a public road.
The order of the Court below will be reversed, and the proceeding dismissed at the cost of the petitioner.
PER CURIAM, Judgment reversed.